IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALI MAHMOOD AWAD IRSAN, SPN #00872773, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. H-17-1434 |
| v. | § § | |
| SHERIFF ED GONZALEZ, et al., | § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Ali Mahmood Awad Irsan ("Irsan"), also known as Ali Mohamed Awad (SPN #00872773), has filed a Complaint Under 42 U.S.C. § 1983, Civil Rights Act ("Complaint") (Docket Entry No. 1), concerning the conditions of his confinement at the Harris County Jail, which is operated by the Harris County Sheriff's Office ("HCSO"). Pending before the court is a Motion for Summary Judgment of Harris County Defendants Renee Hinojosa and Sergeant Anna Ortiz ("Defendants' MSJ") (Docket Entry No. 35). Irsan has not filed a response and his time to do so has expired. Instead, he has filed a Motion for a _Spears_ Hearing (Docket Entry No. 37). After considering all of the pleadings, the exhibits, and the applicable law, the court will grant the Defendants' MSJ and will dismiss this action for the reasons explained below.

## I. Background

Irsan was booked into the Harris County Jail on February 10, 2016.[1] He executed the pending Complaint on May 5, 2017, alleging harassment, discrimination, and interference with his religious beliefs.[2] At the court's request, Irsan supplemented his Complaint with a More Definite Statement of his claims.[3]

Irsan's primary claim is that he was denied an adequate diet during the month of Ramadan,[4] which interfered with his ability to freely exercise his Islamic religious faith as a Sunni Muslim.[5] Specifically, Irsan complains that he was denied "hot meals" during Ramadan in accordance with the law of Islam, which requires a Halal

---

[1]More Definite Statement, Docket Entry No. 10, p. 1. Irsan discloses that he was initially arrested and charged with capital murder on April 27, 2015, in Harris County Cause No. 14265609. See More Definite Statement, Docket Entry No. 10, p. 15. Shortly thereafter on July 6, 2015, Irsan was convicted of conspiracy to defraud the United States and sentenced to 45 months in federal prison. See United States v. Irsan, Crim. No. H-14-248-01 (S.D. Tex.). For purposes of the claims in this case, which arose primarily in 2016, the court treats Irsan as a pretrial detainee.

[2]Complaint, Docket Entry No. 1, pp. 9-10, 12.

[3]Plaintiff's More Definite Statement ("More Definite Statement"), Docket Entry No. 10, pp. 1-27.

[4]Complaint, Docket Entry No. 1, p. 7. Irsan indicates that Ramadan began on June 4 and ended on July 5, 2016. See More Definite Statement, Docket Entry No. 10, p. 5. In 2017 Ramadan occurred between May 27 and June 25. See id.

[5]More Definite Statement, Docket Entry No. 10, p. 2.

diet.[6] According to Irsan, a Halal diet is one that excludes meat from any of the following sources: "(1) dead animals (i.e., those which died naturally); (b) animal[s] slain without invoking Allah's name; (c) animals strangled to death; (d) pigs; (e) carnivorous animals; [and] (f) animals devoured by beasts."[7] When Irsan requested Halal meals during the month of Ramadan, during which meals are taken only before dawn and after sunset, he was offered peanut butter and jelly sandwiches.[8] He claims that the peanut butter and jelly sandwiches gave him digestive problems.[9] Irsan blames Dietitian Renee Hinojosa for failing to provide him with hot Halal meals during Ramadan that were consistent with his religious beliefs.[10]

Irsan further claims that Sergeant Anna Ortiz retaliated or discriminated against him for being Muslim by confiscating certain items of property that he used to practice his religious beliefs.[11] In particular, Sergeant Ortiz reportedly confiscated some "clear plastic trash bags" that Irsan used as a "shower curtain" while

---

[6]See Inmate Complaint Form dated June 13, 2016, Docket Entry No. 1, pp. 25-32; Inmate Complaint Form dated October 3, 2016, Docket Entry No. 1-1, pp. 11-13.

[7]More Definite Statement, Docket Entry No. 10, p. 2.

[8]Complaint, Docket Entry No. 1, p. 8.

[9]Id.

[10]More Definite Statement, Docket Entry No. 10, p. 4.

[11]Complaint, Docket Entry No. 1, p. 12.

cleansing himself before prayer.[12] Sergeant Ortiz also confiscated some "extra sheets [and] towels" that Irsan used as "a prayer rug."[13] Irsan complains that Sergeant Ortiz took away his television because he is Muslim.[14]

Irsan filed this suit under 42 U.S.C. § 1983, alleging that the defendants violated his constitutional rights under the First and Fourteenth Amendments by interfering with the practice of his religious beliefs.[15] Irsan also invokes the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-2e, and the Texas Religious Freedom Restoration Act ("TRFRA").[16] He seeks declaratory and injunctive relief as well as nominal, compensatory, and punitive damages.[17]

Defendants Hinojosa and Ortiz move for summary judgment arguing that they are entitled to qualified immunity from the claims against them in their individual capacity and that Irsan does not otherwise demonstrate a valid claim for official or

---

[12]More Definite Statement, Docket Entry No. 10, p. 9.

[13]Id.

[14]Id.

[15]Complaint, Docket Entry No. 1, pp. 9, 12.

[16]Id.; see also More Definite Statement, Docket Entry No. 10, p. 1.

[17]Complaint, Docket Entry No. 1, p. 13.

-4-

municipal liability against Harris County under § 1983.[18]    In
support of that motion, both Hinojosa and Ortiz have provided
affidavits along with a variety of policies in place at the
Harris County Jail that pertain to Irsan's claims.[19]

## II.  **Standard of Review**

Defendants' MSJ is governed by Rule 56 of the Federal Rules of
Civil Procedure.  Under this rule a reviewing court "shall grant
summary judgment if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also
Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986) (quoting and
discussing former Rule 56(c)).  A fact is "material" if its
resolution in favor of one party might affect the outcome of the
suit under governing law.  Anderson v. Liberty Lobby, Inc., 106
S. Ct. 2505, 2510 (1986).  An issue is "genuine" if the evidence is
sufficient for a reasonable jury to return a verdict for the
nonmoving party.  Id.

In deciding a summary judgment motion the reviewing court must
"construe all facts and inferences in the light most favorable to

_____

[18]Defendants' MSJ, Docket Entry No. 35, p. 16.

[19]Affidavit of Captain Ronny R. Taylor ("Taylor Affidavit"),
Exhibit 3 to Defendants' MSJ, Docket Entry No. 35-4, includes the
following policies: Exhibit C, Religious Practices Plan; Exhibit D,
Chaplaincy Services Policy; Exhibit E, Menus and Nutritional
Adequacy; Exhibit F, Restraints; and Exhibit G, Separation Policy
(on segregated housing).

the nonmoving party." Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010) (internal quotation marks and citation omitted). However, the non-movant "cannot rest on [his] pleadings" where qualified immunity is asserted. Bazan v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001) (emphasis in original). Nor can the non-movant avoid summary judgment simply by presenting "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." Jones v. Lowndes County, Mississippi, 678 F.3d 344, 348 (5th Cir. 2012) (quoting TIG Ins. Co. v. Sedgwick James of Washington, 276 F.3d 754, 759 (5th Cir. 2002)); see also Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence). If the movant demonstrates an "absence of evidentiary support in the record for the nonmovant's case," the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial." Sanchez v. Young County, Texas, 866 F.3d 274, 279 (5th Cir. 2017) (per curiam) (citing Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 812 (5th Cir. 2010)); see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

The plaintiff proceeds pro se in this case. Courts construe pleadings filed by pro se litigants under a less stringent standard

than those drafted by lawyers. <u>See</u> <u>Haines v. Kerner</u>, 92 S. Ct. 594, 596 (1972) (per curiam); <u>see also</u> <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007) ("A document filed <u>pro</u> <u>se</u> is 'to be liberally construed[.]'") (quoting <u>Estelle v. Gamble</u>, 97 S. Ct. 285, 292 (1976)). Nevertheless, "<u>pro</u> <u>se</u> parties must still brief the issues and reasonably comply with [federal procedural rules]." <u>Grant v. Cuellar</u>, 59 F.3d 523, 524 (5th Cir. 1995) (citations omitted). The Fifth Circuit has held that "[t]he notice afforded by the Rules of Civil Procedure and the local rules" is "sufficient" to advise a <u>pro</u> <u>se</u> party of his burden in opposing a summary judgment motion. <u>Martin v. Harrison County Jail</u>, 975 F.2d 192, 193 (5th Cir. 1992) (per curiam).

Irsan has not filed a response to the motion for summary judgment as directed.[20] Instead, he has filed a Motion for a <u>Spears</u> Hearing on his claims.[21] A <u>Spears</u> hearing is a courtroom proceeding that is typically used as a vehicle "for remedying inadequacy in prisoner pleadings[.]" <u>Eason v. Thaler</u>, 14 F.3d 8, 9 & n.5 (5th Cir. 1994) (citing <u>Spears v. McCotter</u>, 766 F.2d 179, 181 (5th Cir. 1985)). Alternatively, a court may use a questionnaire to request a more definite statement of a prisoner's claims. <u>See</u> <u>id.</u> As

---

[20]<u>See</u> Order for Service of Process, Docket Entry No. 14, p. 3 (directing plaintiff to respond to any motion filed by the defendants within thirty days of the date shown on the certificate of service).

[21]Plaintiff's Motion for a <u>Spears</u> Hearing, Docket Entry No. 37, pp. 1-2.

noted above, the court has issued such a questionnaire and Irsan has responded by filing a lengthy More Definite Statement of his claims.[22]   Under these circumstances a <u>Spears</u> hearing is not appropriate.   <u>See</u> <u>Hamer v. Jones</u>, 364 F. App'x 119, 124, 2010 WL 444350, at *4 (5th Cir. 2010) (explaining that a district court is not required to hold a <u>Spears</u> hearing where a questionnaire has been used to develop a pro se prisoner's claims).   Accordingly, Irsan's Motion for a <u>Spears</u> Hearing will be denied.

### III.  <u>Discussion</u>

**A.   Liability Under 42 U.S.C. § 1983**

"To establish a claim under [42 U.S.C.] § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." <u>Pratt v. Harris County, Texas</u>, 822 F.3d 174, 180 (5th Cir. 2016) (internal quotation marks and citation omitted).   Alleging that the defendants have interfered with the practice of his religious beliefs, Irsan claims that the defendants are liable under § 1983 for violating rights guaranteed by the First Amendment Free Exercise Clause, the Fourteenth Amendment Equal Protection Clause, and the RLUIPA.[23]

---

[22]More Definite Statement, Docket Entry No. 10, pp. 1-27.

[23]Complaint, Docket Entry No. 1, pp. 9, 12.

Irsan has filed this suit against Hinojosa, Ortiz, and other individual defendants in their official capacity as municipal employees of Harris County. A suit against a municipal employee in his official capacity is a suit against the municipality. See Bennett v. Pippin, 74 F.3d 578, 584 (5th Cir. 1996) (citing Hafer v. Melo, 112 S. Ct. 358 (1991)). A municipality is not liable under § 1983 on the theory of respondeat superior, Monell v. Dept. of Social Services of City of New York, 98 S. Ct. 2018, 2036-38 (1978), and is legally responsible only for acts that are directly attributable to it "through some official action or imprimatur." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). "'To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right.'" Trammell v. Fruge, 868 F.3d 332, 344 (5th Cir. 2017) (quoting Peterson v. City of Fort Worth, 588 F.3d 838, 847 (5th Cir. 2009)). The official policy itself must be unconstitutional or, if not, must have been "adopted or maintained with deliberate indifference to the known or obvious fact that such constitutional violations would result." Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force, 379 F.3d 293, 309 (5th Cir. 2004).

Defendants Hinojosa and Ortiz argue that Irsan fails to establish that any constitutional or statutory violation occurred and that they are entitled to qualified immunity from liability for

claims against them in their individual or personal capacity.[24] "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 815 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 102 S. Ct. 2727, 2738 (1982)). This is an "exacting standard," <u>City & County of San Francisco, California v. Sheehan</u>, 135 S. Ct. 1765, 1774 (2015), that "protects 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015) (quoting <u>Malley v. Briggs</u>, 106 S. Ct. 1092, 1096 (1986)).

A plaintiff seeking to overcome qualified immunity must satisfy a two-prong inquiry by showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2080 (2011) (citation omitted). If the plaintiff satisfies both prongs of this inquiry, the court then asks whether qualified immunity is nevertheless appropriate because the official's actions were objectively reasonable in light of law that was clearly established when the disputed action occurred. <u>See</u> <u>Brown v. Callahan</u>, 623 F.3d 249, 253 (5th Cir. 2010). "Whether an official's conduct was objectively reasonable is a question of law for the court, not a

---

[24]Defendants' MSJ, Docket Entry No. 35, pp. 14-15, 16.

matter of fact for the jury." Id. (citation omitted). "An official's actions must be judged in light of the circumstances that confronted him and the facts that were available to him, without the benefit of hindsight." Id. (citation omitted).

As this standard reflects, "[a] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." King v. Handorf, 821 F.3d 650, 653-54 (5th Cir. 2016) (internal quotation marks and citations omitted). "'The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct.'" Id. at 654 (quoting Gates v. Texas Dept. of Protective and Regulatory Services, 537 F.3d 404, 419 (5th Cir. 2008)). "'To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present "absolute proof," but must offer more than "mere allegations."'" Id. (quoting Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009)).

## B.   Claims Concerning Irsan's Religious Diet

### 1.   The First Amendment

Irsan's primary claim is that Jail officials violated his First Amendment rights by giving him peanut butter sandwiches for the pre-dawn and evening meals taken during the month of Ramadan.[25]

---

[25]More Definite Statement, Docket Entry No. 10, p. 6. Irsan also appears to claim that he was denied access to a "kosher meat
(continued...)

Irsan contends that this interfered with his ability to practice his religious beliefs because, during that month, he was forced to choose between the peanut butter sandwiches he was offered and eating "hot regular meals" that were not Halal and, therefore, forbidden by the tenets of his Muslim faith.[26] He faults Defendant Hinojosa, in particular, for offering him a diet of peanut butter sandwiches, but no hot Halal fare, during Ramadan.[27]

The Harris County Jail has a Religious Practices Plan or policy that governs religious services, literature, devotional items, and other faith-based programs for inmates who wish to participate.[28] Under this policy the Jail Chaplaincy Department is responsible for providing the inmates with access to religious practices that are "consistent with their documented religious/ faith preference" and are "reasonably comparable to that normally available within the community[.]"[29] Under this policy group and

---

[25] (...continued)
diet" during Ramadan in violation of the First Amendment and RLUIPA. See id. There is no evidence that Irsan ever asked for kosher meals during Ramadan or that he considered kosher food to be an acceptable alternative to the hot Halal meals that he requested. See Inmate Complaint Form dated June 13, 2016, Docket Entry No. 1, pp. 25-32; Inmate Complaint Form dated October 3, 2016, Docket Entry No. 1-1, pp. 11-13. Accordingly, the court does not address this allegation further.

[26] More Definite Statement, Docket Entry No. 10, p. 5.

[27] Id. at 4-5.

[28] Exhibit C to Taylor Affidavit, Religious Practices Plan, Docket Entry No. 35-4, p. 16.

[29] Id.

individual religious or faith-based services are provided under the direction of the Staff Chaplain or an approved Chaplain designee.[30] The Jail Chaplaincy Department also maintains and distributes religious literature from "approved donor sources."[31] Any inmate who requests special accommodations for religious practices, including those that would normally violate facility rules, is required to submit a request in writing to the Jail Chaplaincy Department.[32]

The Chaplaincy Services Policy at the Jail establishes guidelines for conducting religious services and states that "all inmates will have the opportunity to participate in established practices of their religious faith."[33] The Jail Chaplaincy Department coordinates all religious services and provides access to religious publications upon request in compliance with "rules and regulations regarding personal property."[34] Special requests in recognition of an established religious tenet are coordinated by the Chaplaincy Department and the "Justice Housing Bureau Commander."[35] "Observance of Ramadan" is specifically mentioned as

---

[30]<u>Id.</u> at 17.

[31]<u>Id.</u>

[32]<u>Id.</u> at 18.

[33]Exhibit D to Taylor Affidavit, Chaplaincy Services Policy, Docket Entry No. 35-4, p. 20.

[34]<u>Id.</u>

[35]<u>Id.</u> at 21.

one of the established religious tenets recognized in the Chaplaincy Services Policy.[36]  The Chaplaincy Services Policy also provides for special religious diets, which are coordinated with "the dietician and food service manager" at the Jail.[37]

Inmates are advised in the Jail Inmate Handbook to contact the Jail Chaplain concerning any special religious needs.[38]  The Inmate Handbook specifically advises inmates that any special diet requested for religious reasons must be approved by the Health Services Division Dietitian.[39]

Defendant Hinojosa is a registered dietician who has served as Director of Food and Nutrition Services at the Jail since 2015.[40] Hinojosa explains that requests regarding religious accommodations are coordinated through the Jail Chaplaincy Office and the Health Services Division.[41]  Hinojosa states that Harris County has a policy in place at the Jail for "Menus and Nutritional Adequacy," which expressly provides that "requests for religious diet accommodations will be evaluated by the [Medical Diet Technician]

---

[36]Id.

[37]Id.

[38]Exhibit B to Taylor Affidavit, Harris County Sheriff's Office Inmate Handbook, Docket Entry No. 35-4, p. 14.

[39]Id.

[40]Affidavit of Renee Hinojosa, Exhibit 4 to Defendants' MSJ, Docket Entry No. 35-5, p. 2.

[41]Id. at 3.

on a case by case basis."[42]  Under this policy all Muslim prisoners at the Jail are provided with a pork-free diet.[43]

Hinojosa states that in response to Irsan's request for meals consistent with his Muslim religious faith, "he was placed on the Ramadan special diet list and was provided a diet consisting of a peanut butter and jelly sandwich, apple sauce, a cereal bar and a 'boost' drink twice a day to meet his nutritional needs during the month of Ramadan."[44]  Hinojosa notes that the food provided does not qualify as forbidden ("impure or harmful") and is consistent with the acceptable Muslim diet that Irsan describes in his pleadings, which "can be composed of bread, cheese, alternative luncheon meat, peanut butter or other normal staples found in the prison kitchen[.]"[45]  Although Irsan did not receive hot meals during this time, Hinojosa explains that the Harris County Jail houses a constantly fluctuating population of between 8,000 and 9,000 inmates at a given time and that it would be "unduly burdensome on the security, staffing, and budget of food services" to require a "hot" meal preferred by an individual inmate when the food provided is nutritionally adequate.[46]

_____

[42]Id.

[43]Id.

[44]Id. at 5.

[45]Id. (quoting Exhibit to Complaint entitled "Religious Duties of Every Muslim," Docket Entry No. 1-1, p. 14).

[46]Id.

The Supreme Court has interpreted the Free Exercise Clause of the First Amendment to require that prisoners be afforded a "reasonable opportunity" to exercise their religious beliefs. Cruz v. Beto, 92 S. Ct. 1079, 1081 (1972) (per curiam). At the same time, the Court recognized that "prison officials must be accorded latitude in the administration of prison affairs, and that prisoners necessarily are subject to appropriate rules and regulations." Id. at 1081. Prison officials may place limits on the religious rights of prisoners as long as the regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 107 S. Ct. 2254, 2261 (1987); Victoria W. v. Larpenter, 369 F.3d 475, 484 (5th Cir. 2004) (citing Turner, 107 S. Ct. at 2261).

To determine the reasonableness of a regulation that imposes on the religious rights of prisoners, courts typically consider four factors outlined by the Supreme Court in Turner (the "Turner factors"): (1) whether there is a valid, rational connection between the regulation and the legitimate, neutral governmental interest used to justify it; (2) whether there exists alternative means for prisoners to exercise the constitutional right at issue; (3) the impact of an accommodation on prison staff, inmates, and allocation of prison resources; and (4) whether any alternative exists that would fully accommodate prisoners' rights at de minimis cost to valid penological interests. Turner, 107 S. Ct. at 2262; see also Overton v. Bazzetta, 123 S. Ct. 2162, 2168 (listing the

four <u>Turner</u> factors). Of these factors, the first one is frequently dispositive. <u>See, e.g.</u>, <u>Beard v. Banks</u>, 126 S. Ct. 2572, 2580 (2006) (observing that in some cases the second, third, and fourth <u>Turner</u> factors may "add little, one way or another, to the first factor's basic logical rationale").

Irsan does not demonstrate that the meals he was offered during the month of Ramadan violated the tenets of his Muslim faith. Other than citing some gastrointestinal distress, Irsan has not shown that the meals provided to him during Ramadan were nutritionally inadequate, unwholesome, or contained forbidden food and there is no evidence that he suffered any harm.[47] His own pleadings list "peanut butter" and other staples as acceptable food for Muslim inmates.[48] To the extent that there has been any imposition on Irsan's religious expression, the court concludes that the first <u>Turner</u> factor favors Harris County because the practice of providing peanut butter sandwiches along with the other items described by Hinojosa during the month of Ramadan is rationally related to the legitimate governmental interests of security, staffing concerns, and a food services budget that must

---

[47]Absent a showing of physical injury, Irsan is barred from recovering compensatory damages by the Prison Litigation Reform Act ("PLRA"), codified as amended at 42 U.S.C. § 1997e(e), which precludes an action for compensatory damages "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."

[48]Exhibit to Complaint entitled Religious Duties of Every Muslim, Docket Entry No. 1-1, p. 14.

cater to a sizeable Jail population that fluctuates on a daily basis. None of the other Turner factors weigh in Irsan's favor. He provides no information about alternatives that could be provided at de minimis cost or the impact of those accommodations on staff, other inmates, and prison resources.

Providing peanut butter sandwiches as the sole source of nourishment on a temporary basis is not an unconstitutional practice. See Gabel v. Estelle, 677 F. Supp. 514, 515 (S.D. Tex. 1987) ("Mere distaste does not represent a constitutionally cognizable complaint."). To the extent that Irsan would prefer Halal meals that were hot, the Fifth Circuit has consistently held that prison officials "need not respond to particularized religious dietary requests to comply with the First Amendment." Baranowski v. Hart, 486 F.3d 112, 122 (5th Cir. 2007) (citing Kahey v. Jones, 836 F.2d 948 (5th Cir. 1988); Udey v. Kastner, 805 F.2d 1218 (5th Cir. 1986)); see also Omran v. Prator, 674 F. App'x 353, 355 (5th Cir.) (per curiam), cert. denied, 138 S. Ct. 74 (2017) (reaching the same conclusion). "If the prisoner's diet, as modified, is sufficient to sustain the prisoner in good health, no constitutional right has been violated." Alexander v. Carrick, 31 F. App'x 176, 179 (6th Cir. 2002) (per curiam) (citations omitted). Irsan does not otherwise show that any policy in place at the Harris County Jail violated his First Amendment rights.

Irsan has not demonstrated that Hinojosa or any other defendant is liable in their official capacity for failing to meet

his dietary requests during Ramadan. Absent a showing that Hinojosa violated a clearly established constitutional right with respect to this issue, she is entitled to qualified immunity and summary judgment on Irsan's claims against her under the First Amendment.

2. The Fourteenth Amendment

Irsan also alleges that he was denied hot Halal meals during Ramadan in violation of the Fourteenth Amendment because all Jewish inmates at the Jail are provided with kosher meals.[49] Irsan contends, therefore, that "the HCSO Jail" violates the Equal Protection Clause.[50]

The Equal Protection Clause found in the Fourteenth Amendment requires that "all persons similarly situated should be treated alike." Cleburne v. Cleburne Living Center, Inc., 105 S. Ct. 3249, 3254 (1985) (citing Plyler v. Doe, 102 S. Ct. 2382, 2394 (1982)). To succeed on an equal protection claim, an inmate "'must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated.'" Baranowski, 486 F.3d at 123 (quoting Adkins v. Kaspar, 393 F.3d 559, 566 (5th Cir. 2004)).

Irsan's equal protection claim fails because he does not allege facts showing that similarly situated inmates are treated differently or more favorably because of their faith. Irsan has

_____

[49]More Definite Statement, Docket Entry No. 10, pp. 6-7.

[50]Id.

-19-

not demonstrated that he was provided with meals that violated his religious beliefs or that he was singled out for unequal treatment based on his Muslim faith. Irsan does not otherwise allege or show that any Jail policy concerning special religious dietary requests is reflective of purposeful discrimination. Under these circumstances Irsan's unsubstantiated allegations of unequal treatment are not enough to succeed on an equal protection claim. See Baranowski, 486 F.3d at 123 (citing Adkins, 393 F.3d at 566). Accordingly, the defendants are entitled to summary judgment on this claim.

### 3. RLUIPA

By failing to offer hot Halal meals during Ramadan, Irsan contends further that Jail officials have violated his rights under RLUIPA.[51] "RLUIPA imposes a higher burden than does the First Amendment in that the statute requires prison regulators to put forth a stronger justification for regulations that impinge on the religious practices of prison inmates." Mayfield v. Texas Dept. of Criminal Justice, 529 F.3d 599, 612 (5th Cir. 2008). RLUIPA provides that

> No government shall impose a substantial burden on the religious exercise of [an inmate] . . . unless the government demonstrates that imposition of the burden on that person—
>
> (1)    is in furtherance of a compelling governmental interest; and

---

[51]More Definite Statement, Docket Entry No. 10, p. 6.

(2)   is the least restrictive means of furthering that
      compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  To prevail on a claim under RLUIPA "the
plaintiff bears the initial burden of proving that the challenged
government action substantially burdens the plaintiff's religious
exercise." DeMoss v. Crain, 636 F.3d 145, 150 (5th Cir. 2011) (per
curiam) (internal quotation marks and citation omitted).

     To establish a "substantial burden" a prisoner must show that
"it truly pressures the adherent to significantly modify his
religious behavior and significantly violate his religious
beliefs." Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004).
That burden is satisfied if the prisoner shows that because of a
government action, regulation, or restriction, he was
(1) influenced to act in a way that violated his religious beliefs,
or (2) forced to choose between enjoying a generally available
benefit and following his religious beliefs.  See id.  "If the
plaintiff meets this burden of proof, the burden shifts to the
government to demonstrate that its action was supported by a
compelling interest and that the regulation is the least
restrictive means of carrying out that interest." DeMoss, 636 F.3d
at 150 (internal quotation marks and citation omitted).

     As a preliminary matter, Irsan does not state a claim under
RLUIPA against Hinojosa or any other individual defendant in this
case.  It is well established that a cause of action does not exist
under the RLUIPA against an individual defendant in his or her

-21-

personal capacity. See Sossamon v. Lone Star State of Texas, 560 F.3d 316, 329 (5th Cir. 2009), aff'd, Sossamon v. Texas, 131 S. Ct. 1651 (2011). Likewise, RLUIPA does not authorize a suit for money damages. See Sossamon v. Texas, 131 S. Ct. 1651, 1655 (2011).

To the extent that Irsan seeks declaratory and injunctive relief under RLUIPA, Irsan has not established that he is entitled to prevail because, for reasons noted above, he has not shown that the meals he was offered during the month of Ramadan violated the requirements of a Halal diet or that Jail officials violated the tenets of his Muslim faith by forcing him to eat forbidden food. Irsan has not otherwise established that the meals provided pursuant to the policies in place at the Jail substantially burdened his ability to exercise his religious beliefs in violation of RLUIPA. Based on this record, the defendants are entitled to summary judgment on his RLUIPA claims.

### 4. The Texas Religious Freedom Restoration Act

Similar to his claim under RLUIPA, Irsan contends that Jail officials violated the TRFRA by denying him hot Halal meals during Ramadan.[52] Like RLUIPA, the TRFRA provides that "a government agency may not substantially burden a person's free exercise of religion," unless the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. See Tex. Civ. Prac. & Rem. Code

---

[52]More Definite Statement, Docket Entry No. 10, p. 7.

§ 110.003(a)-(b); <u>Barr v. City of Sinton</u>, 295 S.W.3d 287, 299 (Tex. 2009) (outlining a four-part inquiry for evaluating a claim under the TRFRA, which requires a plaintiff to show that a government regulation burdens his free exercise of religion in a manner that is "substantial").

"Claims under TRFRA may be resolved by consideration of case law applying RLUIPA and its predecessor, the Religious Freedom Restoration Act of 1993." <u>McFaul v. Valenzuela</u>, 684 F.3d 564, 576 (5th Cir. 2012) (citing <u>A.A. ex rel. Betenbaugh v. Needville Indep.</u> <u>Sch. Dist.</u>, 611 F.3d 248, 258-59 (5th Cir. 2010)). For the reasons stated above, Irsan has not shown that his ability to exercise his Muslim beliefs was substantially burdened by the failure of Jail officials to provide hot Halal meals during the month of Ramadan. Absent a showing that his religious beliefs were substantially burdened as the result of a governmental policy in place at the Jail, he does not establish a valid claim under TRFRA. Therefore, the defendants are entitled to summary judgment on this issue.

C. **Irsan's Retaliation Claims**

Irsan contends that Sergeant Ortiz retaliated or discriminated against him in violation of the First Amendment by confiscating certain items of property from his cell because of his Muslim beliefs. Irsan, who explains that he prays five times as part of the practice of his Muslim faith, claims that Sergeant Ortiz confiscated some "clear plastic trash bags" that Irsan used as a

-23-

"shower curtain" while cleansing himself before prayer.[53] Sergeant Ortiz also confiscated some "extra sheets [and] towels" that Irsan used as "a prayer rug."[54] Irsan complains further that Sergeant Ortiz took away his television for purposes of harassment because he is Muslim.[55]

"To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998); see also Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006). "Causation requires a showing that but for the retaliatory motive the complained of incident . . . would not have occurred." Id. (internal quotation marks and citations omitted). The Fifth Circuit has emphasized that prison officials must be given "wide latitude" in the management of inmates and has cautioned district courts to "carefully scrutinize" retaliation claims:

> The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.

---

[53]More Definite Statement, Docket Entry No. 10, p. 12.

[54]Id.

[55]Id.

<u>Woods v. Smith</u>, 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting <u>Adams</u> <u>v. Rice</u>, 40 F.3d 72, 74 (4th Cir. 1994)). An inmate must allege more than his personal belief that he is the victim of retaliation. <u>See</u> <u>Jones v. Greninger</u>, 188 F.3d 322, 325 (5th Cir. 1999) (citing <u>Johnson v. Rodriguez</u>, 110 F.3d 299, 310 (5th Cir. 1997)). To demonstrate that a defendant acted with intent to retaliate, a prisoner must produce "direct evidence of motivation" or, at the very least, he must "allege a chronology of events from which retaliation may plausibly be inferred." <u>Woods</u>, 60 F.3d at 1166.

Sergeant Ortiz explains that she encountered Irsan in April of 2016 while he was assigned to the Administrative Separation unit of the Jail, which is "also referred to as 'lockdown' and 'maximum security' because it is where the most dangerous and high risk inmates are housed."[56] Security procedures are "strictly enforced" at the Jail, and inmates assigned to this area in particular are not allowed to keep any "unauthorized" items in their cells.[57] Ortiz acknowledges that she removed Irsan's television after inspection revealed that it was not assigned to him and, therefore, was not authorized to be in his cell.[58] She explains that the television was removed pursuant to Jail procedures to maintain

_____

[56]Affidavit of Sergeant Anna Ortiz, Exhibit 6 to Defendants' MSJ, Docket Entry No. 35-6, p. 3.

[57]<u>Id.</u> at 4.

[58]<u>Id.</u>

"control and order in the Jail," and not for a retaliatory reason.[59]
After Irsan's television was removed, the issue was brought to the
attention of "command staff," which "determined that additional
televisions should be acquired so that every inmate in
Administrative Separation would have a television in his/her
cell."[60]

In addition, Sergeant Ortiz explains that Irsan was provided
with extra towels and sheets, as well as extra plastic trash bags
to use as a shower curtain, to ensure that he had a clean, dry
place to pray in his cell.[61] Ortiz states that she never saw Irsan
praying when she was conducting her rounds, but states that she
observed towels and sheets on the floor of his cell.[62] Ortiz
explains that items are removed from an inmate's cell for reasons
of security and safety when there are too many extra materials or
they are used improperly in a manner that could potentially cause
the growth of mold or "other health issues."[63] Although Irsan was
allowed to have extra towels, sheets, and plastic bags, items were
removed "when they were beginning to show mold after being used too
long and [were not] properly stored."[64] According to Sergeant

---

[59]Id.

[60]Id.

[61]Id. at 5.

[62]Id.

[63]Id.

[64]Id.

Ortiz, this was done in order "to maintain proper health and safety," and not for purposes of retaliation or harassment.[65]

In support of Ortiz's Affidavit, the defendants provide a copy of the Separation Policy in place at the Jail, which requires officers to visually observe each inmate and their cell in Administrative Separation "to ensure the safety and well-being of the inmate and the cleanliness and sanitation of the cell/cellblock[.]"[66] Irsan, by contrast, provides nothing more than his bare allegation that items were removed from his cell in retaliation or for purposes of discriminatory harassment because of his Muslim faith. Conclusory allegations such as these are not sufficient to overcome the defense of qualified immunity or the defendants' properly supported motion for summary judgment. See Woods, 60 F.3d at 1166; see also Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996) ("[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment.").

Irsan has not demonstrated what items were removed from his cell or that his ability to pray five times a day was infringed upon by an unconstitutional policy. Therefore, he has not shown that Ortiz or any other defendant is liable in their official

---

[65]Id.

[66]Exhibit G to Taylor Affidavit, Exhibit 3 to Defendants' MSJ, Docket Entry No. 35-4, p. 44.

capacity for removing items from his cell in violation of the Constitution. Absent a showing that Hinojosa violated a clearly established constitutional right with respect to this issue, she is entitled to qualified immunity and summary judgment on Irsan's claims against her for retaliation under the First Amendment.

## D.    Remaining Defendants

In addition to the above-referenced individual and official capacity claims against Hinojosa and Ortiz, Irsan also mentions the following other individual defendants in his pleadings as parties who are liable for violating his rights under 42 U.S.C. § 1983: (1) Harris County Sheriff Ed Gonzalez; (2) former Harris County Sheriff Ron Hickman; (3) Bureau Commander Tim Cannon; (4) Bureau Commander Virginia Cavazos-Russell; (5) an unidentified contract chaplain; and (6) an unidentified food service manager.[67]   When asked to provide details in support of his claims against each of these individuals, however, Irsan did not articulate any facts showing that they had the requisite personal involvement in a constitutional or other violation of his rights.[68]   Irsan has therefore failed to allege a valid claim under § 1983 against these individual defendants.   See Murphy v. Kellar, 950 F.2d 290, 292 (5th Cir. 1992) (noting that a plaintiff bringing a § 1983 action

---

[67]Complaint, Docket Entry No. 1, pp. 1-2, 4-5.

[68]More Definite Statement, Docket Entry No. 10, pp. 7-9.

-28-

must "specify the personal involvement of each defendant");
_Thompson v. Steele_, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal
involvement is an essential element of a [42 U.S.C. § 1983] cause
of action.").

To the extent that Irsan names Sheriff Gonzalez and former
Sheriff Hickman as defendants in their supervisory or official
capacity as policymakers over the Jail, liability is available in
this context only where a plaintiff establishes that either
Gonzalez or Hickman implemented a policy "so deficient that the
policy itself is a repudiation of constitutional rights and is the
moving force of the constitutional violation." _Thompkins v. Belt_,
828 F.2d 298, 304 (5th Cir. 1987) (internal quotation marks and
citations omitted). Irsan has not made that showing here.
Accordingly, the allegations against the remaining defendants will
be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to
state a claim upon which relief may be granted.

## IV. <u>Conclusion and Order</u>

Accordingly, the court **ORDERS** as follows:

1.   The Motion for Summary Judgment of Harris County
     Defendants Renee Hinojosa and Sergeant Anna Ortiz
     (Docket Entry No. 35) is **GRANTED**, and the claims
     against them are **DISMISSED with prejudice.**

2.   Plaintiff, Ali Mahmood Awad Irsan's, Motion for a
     <u>Spears</u> Hearing (Docket Entry No. 37) is **DENIED.**

3.   The plaintiff's allegations against all other
     defendants named in the Complaint are **DISMISSED**

**with prejudice** pursuant to 28 U.S.C.
§ 1915(e)(2)(B) for failure to state a claim upon
which relief may be granted.

4.   A separate final judgment will issue.

The Clerk shall provide a copy of this Memorandum Opinion and

Order to the parties.

**SIGNED** at Houston, Texas, on this the 26th day of April, 2018.

SIM LAKE<br>
UNITED STATES DISTRICT JUDGE